```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
GREGORY TESNAR,                            :   Case No.: _____
                                           :
              Plaintiff,                   :   **COMPLAINT**
                                           :
     -against-                             :   **DEMAND FOR JURY TRIAL**
                                           :
FITBIT, INC., JAMES PARK, ERIC N.          :
FRIEDMAN, LAURA ALBER, MATTHEW             :
BROMBERG, GLENDA FLANAGAN,                 :
BRADLEY M. FLUEGEL, STEVEN                 :
MURRAY, and CHRISTOPHER PAISLEY,           :
                                           :
              Defendants.                  :
------------------------------------------ X
```

Plaintiff, Gregory Tesnar ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Fitbit, Inc. ("Fitbit" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Fitbit, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Fitbit and Google LLC ("Google").

2.      On November 1, 2019, Fitbit entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive $7.35 in exchange for each share of Fitbit common stock they own (the "Merger Consideration").

3.      On November 25, 2019, in order to convince Fitbit's shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and

misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning certain financial projections for the Company and the valuation analyses performed by Fitbit's financial advisor, Qatalyst Partners LP ("Qatalyst") in support of their fairness opinion.

5. The special meeting of Fitbit shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Fitbit's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible

under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Fitbit's common stock trades on New York Stock Exchange, which is headquartered in this District, Fitbit hired Innisfree M&A Incorporated, which is also headquartered in this District, as a proxy solicitor for the purpose of the Proposed Merger, and the closing of the Merger Agreement and Proposed Merger is scheduled to take place in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10. Plaintiff is, and at all relevant times has been, a holder of Fitbit common stock.

11. Defendant Fitbit is a global manufacturer and marketer of beauty and related products. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "FIT".

12. Individual Defendant James Park is, and has been at all relevant times, a director of Fitbit.

13. Individual Defendant Eric N. Friedman is, and has been at all relevant times, a director of Fitbit.

14. Individual Defendant Laura Alber is, and has been at all relevant times, a director

of Fitbit.

15. Individual Defendant Matthew Bromberg is, and has been at all relevant times, a director of Fitbit.

16. Individual Defendant Glenda Flanagan is, and has been at all relevant times, a director of Fitbit.

17. Individual Defendant Bradley M. Fluegel is, and has been at all relevant times, a director of Fitbit.

18. Individual Defendant Steven Murray is, and has been at all relevant times, a director of Fitbit.

19. Individual Defendant Christopher Paisley is, and has been at all relevant times, a director of Fitbit.

20. The Individual Defendants referred to in ¶¶ 12-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Fitbit they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I. Background and the Proposed Merger

21. Fitbit is a provider of health and fitness devices. The Company's platform combines connected health and fitness devices with software and services, including an online dashboard and mobile applications, data analytics, motivational and social tools, personalized insights and virtual coaching through customized fitness plans and interactive workouts. It offers various fitness devices, including Fitbit Zip, Fitbit One, Fitbit Flex, Fitbit Flex 2, Fitbit Charge, Fitbit Charge 2, Fitbit Blaze, Fitbit Charge HR, Fitbit Surge, Fitbit Accessories and Aria. Its platform includes wearable connected health and fitness trackers, which are wrist-based and clippable devices that automatically track users' daily steps, calories burned, distance traveled, and active minutes and

display real-time feedback. Its trackers also measure sleep duration and quality, and its products track heart rate and global positioning system-based information. It also offers a wireless fidelity connected scale.

22.   Google is a subsidiary of Alphabet Inc., one of the largest companies in the world.

23.   On November 1, 2019, Fitbit issued a press release announcing the Proposed Merger, which states in relevant part:

### Fitbit to be Acquired by Google

SAN FRANCISCO, 1 November 2019 - Fitbit, Inc. (NYSE: FIT) today announced that it has entered into a definitive agreement to be acquired by Google LLC for $7.35 per share in cash, valuing the company at a fully diluted equity value of approximately $2.1 billion.

"More than 12 years ago, we set an audacious company vision - to make everyone in the world healthier. Today, I'm incredibly proud of what we've achieved towards reaching that goal. We have built a trusted brand that supports more than 28 million active users around the globe who rely on our products to live a healthier, more active life," said James Park, co-founder and CEO of Fitbit. "Google is an ideal partner to advance our mission. With Google's resources and global platform, Fitbit will be able to accelerate innovation in the wearable's category, scale faster, and make health even more accessible to everyone. I could not be more excited for what lies ahead."

"Fitbit has been a true pioneer in the industry and has created terrific products, experiences and a vibrant community of users," said Rick Osterloh, Senior Vice President, Devices & Services at Google. "We're looking forward to working with the incredible talent at Fitbit, and bringing together the best hardware, software and AI, to build wearables to help even more people around the world."
Fitbit pioneered the wearables category by delivering innovative, affordable and engaging devices and services. Being "on Fitbit" is not just about the device - it is an immersive experience from the wrist to the app, designed to help users understand and change their behavior to improve their health. Because of this unique approach, Fitbit has sold more than 100 million devices and supports an engaged global community of millions of active users, utilizing data to deliver unique personalized guidance and coaching to its users. Fitbit will continue to remain platform-agnostic across both Android and iOS.

Consumer trust is paramount to Fitbit. Strong privacy and security guidelines have been part of Fitbit's DNA since day one, and this will not change. Fitbit will continue to put users in control of their data and will remain transparent about the data it collects and why. The company never sells personal information, and Fitbit health and wellness data will not be used for Google ads.

> The transaction is expected to close in 2020, subject to customary closing conditions, including approval by Fitbit's stockholders and regulatory approvals.
>
> Qatalyst Partners LLP acted as financial advisor to Fitbit, and Fenwick & West LLP acted as legal advisor.

24.     The Merger Consideration represents inadequate compensation for Fitbit shares. In recent quarters, Fitbit has outperformed expectations by beating earnings estimates. Moreover, just prior to the announcement of the Merger Agreement, reports were made that any offer below $10 per share would represent insufficient consideration for Fitbit. Given the Company's strong recent financial performance and bright economic outlook, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

   **II.     The Proxy Omits Material Information**

25.     On November 25, 2019, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

26.     The Proxy describes Qatalyst's fairness opinion and two of the valuation analyses performed in support of their opinion. Defendants concede the materiality of this information in citing Qatalyst's fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to Fitbit shareholders. Proxy at 36. However, the summaries of Qatalyst's fairness opinion and analyses provided in the Proxy fail to include key inputs and assumptions underlying the analyses. Without this information, as described below,

Fitbit's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Qatalyst's fairness opinion in determining how to vote on the Proposed Merger. See Proxy at 40 ("The analyses and factors described below must be considered as a whole; considering any portion of such analyses or factors, without considering all analyses and factors, could create a misleading or incomplete view of the process underlying Qatalyst Partners' opinion . . . Considering the data set forth below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of Qatalyst Partners' financial analyses."). The following omitted information, if disclosed, would significantly alter the total mix of information available to Fitbit's shareholders.

27. First, for the purpose of preparing its *Selected Companies Analysis*, Qatalyst Partners utilized both the consensus of third-party research analysts' projections ("Analyst Projections") and the Company's management-calculated projections. However, the Proxy only discloses Fitbit's management prepared projections. The failure to disclose an entire set of projections to Fitbit's shareholders presents an incomplete summary of both the Company's projections and the analyses they were used in. Indeed, on page 42, the Proxy concedes that financial projections "available to Qatalyst Partners for use in its financial analyses in connection with rendering its opinion to our Board as described in the section captioned '—Opinion of Fitbit's Financial Advisor'" should be disclosed to shareholders. Thus, the omission of the Analyst projections renders both the summary of the *Selected Companies Analysis* and the summary of the *Financial Projections* on pages 42-45 of the Proxy misleadingly incomplete.

28. Next, in summarizing the *Illustrative Discounted Cash Flow Analysis* prepared by Qatalyst, the Proxy fails to disclose the following key information used in the analysis: (i) the inputs and assumptions underlying the 12.5% to 16.5% discount rate, including the company

7

specific CAPM and WACC components; (ii) the actual terminal values calculated; (iii) the implied net present value of the forecasted tax attributes; (iv) the amount of cash; and (v) the number of fully-diluted shares of Fitbit common stock, adjusted, as applicable, for Fitbit RSUs, Fitbit PSUs, Fitbit Options, and the Warrant.

29. These key inputs are material to Fitbit shareholders, and their omission renders the summary of the *Illustrative Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

30. Without the above-omitted information Fitbit shareholders are misled as to the reasonableness or reliability of Qatalyst's analysis, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Illustrative Discounted Cash Flow Analysis* included in the Proxy misleading.

31.     Finally, on page 149, the Proxy states that "In connection with the review of the Merger by our Board, Qatalyst Partners performed a variety of financial and comparative analyses for purposes of rendering its opinion." However, only two such analyses were disclosed—the *Selected Companies Analysis* and the *Illustrative Discounted Cash Flow Analysis*—not a variety of financial and comparative analyses. Page 39 of the Proxy further states:

> Qatalyst Partners also reviewed the historical market prices and trading activity for our Class A Common Stock and compared our financial performance and the prices and trading activity of our Class A Common Stock with that of certain other selected publicly-traded companies and their securities. ***In addition**, Qatalyst Partners performed such **other analyses**, reviewed such other information and considered such other factors as it deemed appropriate.*

(emphasis added). In this passage, the Proxy describes the *Selected Companies Analysis* and states that Qatalyst performed "other analys*es*" in addition to the *Selected Companies Analysis*. The Proxy only describes one other analysis—the *Illustrative Discounted Cash Flow Analysis*. Therefore, at least one additional analysis—and likely a variety of financial and comparative analyses—must have been performed, but omitted from the summary provided in the Proxy.

32.     When it comes to summarizing financial information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. The disclosure of only two financial analyses and withholding of the remaining financial analyses renders the summary of Qatalyst's financial analyses and fairness opinion misleadingly incomplete.

33.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, financial projections for the Company and the valuation analyses performed Qatalyst in support of their fairness opinion.

38. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted

10

information, but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

39. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Qatalyst reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Qatalyst, as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Qatalyst's analyses in connection with their receipt of the fairness opinion, question Qatalyst as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

40. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

41. Fitbit is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

42. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Fitbit's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Fitbit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

47. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Fitbit shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 9, 2019              **MONTEVERDE & ASSOCIATES PC**

   */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorney for Plaintiff*